I'd like to reserve three minutes for rebuttals please. Your Honor, in the time allotted to the Blewitt, I'll focus on our statutory interpretation argument to show that Congress fairly implied that the Fair Sentencing Act's new mandatory minimums apply in proceedings under Section 3850 D.C. 2. Mr. Sutherland, who is counsel for the amicus, will use his allotted time to address the protection argument. Your Honor, Congress enacted the Fair Sentencing Act to restore fairness to federal cocaine sentencing. And it did that by replacing the unjustified and discriminatory pre-FSA mandatory minimums for crack offenses and directing the Sentencing Commission to promulgate conforming amendments that would achieve consistency with applicable law and consistency with other guidelines. The Supreme Court held in Dorsey that the new mandatory minimums did apply to cases in which defendants were sentenced after the effective date of the act. It's undisputed that the FSA's guideline amendments apply in 3852 proceedings. But we maintain that there is a fair implication that Congress also intended that the FSA's new mandatory minimums apply in 3852 C. 2 proceedings. The act certainly doesn't say that, does it? No, the act does not say that, that it is specifically retroactive. In fact, the presumption is not retroactive pursuant to that old saving statute, the 1877 section? Your Honor, we don't believe that the saving statute is applicable in this instance because as the Supreme Court recognized in Dorsey, we could draw a fair implication from the language and several other factors in the FSA that Congress intended the FSA's new mandatory minimums to apply to defendants eligible for 3852 C. 2 relief. So the saving statute is not an obstacle in this situation. But didn't Dorsey contemplate that there would be this disparity between pre-act sentencing and post-act sentencing? It seems funny to contemplate that and then suddenly eliminate it by accepting this argument. Well, Your Honor, the Supreme Court said in Dorsey, it recognized that there would be disparities if it applied the FSA new mandatory minimums retroactively to pre-act defendants who were sentenced after the statute went into effect. But I think it's also important to note that almost in the same breath, the same sentence, the court said, unless Congress intends reopening sentencing proceedings that are concluded prior to the effective date of the new statute. And we would submit that that language here strongly suggests that the court recognized that Congress could, in fact, intend that the FSA mandatory minimums would apply in 3852 proceedings. There are several factors. Let me put it this way. I would have said that every justice in that case assumed that if you were sentenced pre-FSA, you weren't going to get the benefit of the change. And I think it's fair to say from the briefs and the oral arguments that every litigant in the case, all three said, I mean, I'm quoting now the amicus that was court-appointed to defend the Seventh Circuit. Quote, everybody agrees that Congress did not want to reopen final sentences. So don't we have to assume that everyone at Dorsey was assuming that the problem you're saying we need to correct didn't need to be corrected, at least in Dorsey? Well, first of all, Your Honor, that's just an assumption. Dorsey can be distinguished, I think, relatively easily from this case. Dorsey dealt with the direct appeal where the defendant was being sentenced pursuant to the factors in 18 U.S.A. 3553 and also under the guidelines section 1B.1.1. Here we have a completely different situation. Yes, so Dorsey is a fool's errand if your 3582 argument is right, right? Because, in other words, Dorsey didn't accomplish anything if the interpretation you're giving us of 3582 is the correct one. Dorsey dealt with the issue that was presented in that particular case. The issue that's presented here was not presented in Dorsey. Our position is that the door is still open on this issue. Counsel, let me see if we can clarify something here so that we at least all understand the way the sentencing system is working. I think the best way for me to ask the question is to say that in the amicus brief that Professor Berman filed in this case, on page 11 he says, amicus respectfully suggests that the government is likely unable to identify any legitimate penological justification for requiring less serious low-quantity crack offenders and only less serious low-quality crack offenders to serve out the full duration of now-repealed excessive pre-Fair Sentencing Act mandatory minimum sentences, especially given that all more serious higher-quantity crack offenders have been eligible to receive the retroactive benefits of the more lenient FSA sentences. I want to see if we can make at least what he is saying there clear. My understanding is, as he says here, that it's accurate to say that a high-quantity crack cocaine defendant who received a guideline sentence, not a mandatory minimum sentence, can get a retroactive reduction to the new sentencing guidelines, which are 500% less than the old ones, whereas a less serious crack cocaine defendant who was sentenced pursuant to a mandatory minimum may not get. Is that your understanding? Yes, Your Honor. Why is that true? I think Professor Berman is right in that point. I mean, that seems crazy, for the high-quantity crack cocaine defendant who is sentenced pursuant to the guidelines, because of the quantity, is able to get a reduction to the new guideline sentences, which is a very substantial reduction, whereas the lesser-quantity defendant, sentenced under a mandatory minimum, is not able to do that. You don't quite agree with him, right? Because it's only that they can get down to the mandatory minimum. Get down to the new guideline sentences. Is that what you think is right? Your Honor, I think the point Judge Merritt is making reflects the problems with the 101 ratio, and even under the FSA. Those at the upper end of the guideline, if their guideline sentences are above the mandatory minimum, they are going to get a sentence reduction under the FSA. To what? He's saying you can go below the mandatory minimum, and I want to hear what you say about that. Excuse me. I would prefer that argument come from the podium. Well, I just want to correct some things here. And that will be fine, Judge, but we're not going to argue amongst ourselves. Let's deal with counsel. The question is, does it go to... It's true that if you're sentenced above the mandatory minimum, this is the oddity point, you can get the benefit, whereas if you're at the mandatory minimum, you can't. The only thing I just want to be clear about is whether you think you can now be sentenced below the mandatory minimum. And I didn't think you would say that, but maybe you will. Well, I think one of the fundamental issues in this case, Your Honor, is which mandatory minimum applies. Is it the old mandatory minimum, which is the obstacle that the Bluets are facing, or does the new mandatory minimum apply? And the guidelines don't speak to which mandatory minimum. And we would submit that it has to be the new mandatory minimum. There's no language in Section 1B.1.10 that precludes the new mandatory minimums from applying the FSA new mandatory minimums in 3852 proceedings. And we would submit that if the commission intended that the new mandatory minimums did not apply, and that the old ones did apply, that creates an equal protection problem. But that just takes you back to the retroactivity of the FSA, doesn't it? In other words, if it's not retroactive, then you would apply the old mandatory minimum after this reduction to account for the drop in the guidelines, right? Well, our position is, of course, that the FSA is retroactive. Right, but I'm just saying, if you happen to be wrong about that, that's what I'm trying to get at. That seems to be the premise of this point, of why you could get below the old mandatory minimum. Well, I mean, again, my point is, we still don't know which mandatory minimum applies, if it's the old one or the new one. Can you cite us any authority that supports your position that the FSA is retroactive to those already sentenced prior to its effective date? Our argument is based on a fair implication from... I'm saying, do you have any authority you can cite us? Is there any case that so holds? Yes, Your Honor, I'm sorry. The U.S. v. Doe, a case from this court. Is that the three-judge decision? A majority in that case agreed that the FSA was retroactive to that defendant. Now, was that either substantial assistance or safety violations? It was a substantial assistance. But we don't have that fact here.  So, was that the FSA was retroactive to defendants sentenced before the act went into effect? And they asked the same question that I presented here, which mandatory minimum applied? They determined that the only way to effectuate Congress' intent that the amended guidelines be consistent with the applicable law is for the... I'm sorry, Your Honor. They'd be consistent with applicable law as if the new mandatory minimums applied in 3852C2 proceedings. So, we think Doe fully supports our position. Counsel? Yes, Your Honor. Counsel, the reason you go below the old mandatory minimums and the reason why Professor Berman is right about it is that's what 1B1.10, Reduction in the Terms of Imprisonment, that's what it says. This is the way it works. So that if you get a guideline sentence, you can get the benefit of the new guidelines. If you get a mandatory sentence, the question is do you get the benefit of the new mandatory minimums. But it's clear is it not under 1B1.10 that you do get the new guideline sentence if you got a guideline sentence before. There's certainly nothing in 1B1.10 to preclude that result, Your Honor. So we would agree that 1B1.10 is not an obstacle. Counsel, I'm probably farther along with your argument than some of my colleagues, but I want to tell you where I'm hanging up so that you can address it. And that's the point that's made in the panel decision that 3582 itself requires that the sentence be based on a sentencing range that has subsequently been lowered by the Sentencing Commission. How do you deal with that? Because that just seems to be statutory language that apart from all of the policy considerations and avoiding anomalies and so forth, you still have to get over that, don't you? That's right, Your Honor. That's true. But I don't see that as an obstacle in our case. I'm sorry. Go ahead. Why not? It looks like that's not as my colleague said. There's a difference between being sentenced under a mandatory minimum statute that's been amended by Congress and a sentencing range that's been lowered by the Sentencing Commission. Those are different things, right? Well, if I can use Cornelius Blewett's case as an example, his original guideline range was 110 to 137 months based on the total offense level and criminal history category. Now, he was subject to a mandatory minimum of 120 months. All that means is that the guideline range is still 110 to 137 months. All the mandatory minimum means is that he's not going to get a sentence between 110 and 119 months. His applicable guideline range is still 110 to 137 months. And then when the FSA guideline amendments came in, his criminal history remained the same, but the total offense level dropped from 25 to 19, so that under the FSA amendments, his guideline range became 63 to 78 months. So there's no doubt that his guideline range was lowered by the sentencing range. And the question is, again, I go back to the point I was trying to make with Judge Sutton. Even though it didn't have an effect? Well, and the reason it didn't have an effect is because of the mandatory minimum. But our argument is what mandatory minimum? If the old mandatory minimum applies, which it did in this case, that prevented him from getting a sentence reduction. Our contention is the new mandatory minimum applies. And as I mentioned earlier, 1B.110 doesn't say which particular mandatory minimum applies. And if it means the old mandatory minimum applies, then there's a serious equal protection problem. Is your argument dependent on the serious equal protection problem? No, it's independent of our statutory construction argument, Your Honor. We've offered several reasons why the statute, the FSA, can be construed so that we believe that there's a fair implication that Congress intended that the new FSA mandatory minimum would apply in this situation. How does the guideline 1B.110, I'm trying to figure out what that has to do with whether the FSA is retroactive. I'm scratching my head over that. I'm sorry, which guideline, Your Honor? The one that you and Judge Merritt have been talking about, that it's not an impediment in a resentencing to think that you apply the new mandatory minimum, okay, which is to say the FSA, okay? Yes, Your Honor. And I'm just struggling with why the guidelines have anything to say about whether the FSA, a federal statute, is retroactive. That's what I'm struggling with. Well, let me make it. Our position is, of course, that Congress has the power to – if I could use some of my rebuttal time, Your Honor. Congress is the body that has the power to decide whether to impose an active mandatory minimum or amend a mandatory minimum. It's beyond the Commission's power to say this – to delegate or to enact a mandatory minimum. They're taking their cue from Congress, which mandatory minimum, but they don't say in 1B.110 which mandatory minimum applies. There is nothing in that particular guideline that points to which mandatory minimum applies. But I'm just saying, just hypothetically, there was direction, okay? Let's just say it clearly said, we, the Commission, say the new mandatory minimum, the lowered mandatory minimum applies. My question is, well, how does the Commission have that authority if Congress didn't make it retroactive? Your Honor. I'm sure I'm missing something. We would agree with you that we don't think the Commission has that authority. They couldn't say that. Okay. Okay. Well, then, that seems fair. Thank you, Your Honor. Thank you, Counsel. Good afternoon, Your Honor. May it please the Court. The 101 sentencing disparity remains one of the most notorious symbols of racial discrimination and unfairness in the modern criminal justice system. Congress enacted the Fair Sentencing Act to restore fairness to federal cocaine sentencing by ensuring that crack cocaine offenders no longer face the 100 to 1 regime. There can be no rational, legitimate basis for allowing some to benefit from the Fair Sentencing Act's new, more lenient mandatory minimum sentences, while others, like the Bluets, continue to serve sentences imposed under a 100 to 1 regime that Congress recognized was arbitrary, was irrational, was unjust, and unwarranted. To perpetuate that 100 to 1 regime, in this case, is so irrational and arbitrary as to violate the Equal Protection Clause. By contrast, the Bluets have offered the construction of the Fair Sentencing Act that not only comports with the Constitution but also gives effect to Congress's intent, which was to remedy the 100 to 1 unjustified ratio. I'd ask this Court to adopt that interpretation, avoid the serious constitutional questions raised by the government's interpretation of the Fair Sentencing Act, and give effect to Congress's intent in terms of the Fair Sentencing Act itself, which was to remedy the 100 to 1 disparity. Your Honor, if I could begin with talking about the Equal Protection Clause's concern with irrational and arbitrary classification. That's something that's at the heart of the Equal Protection Clause's protections. In this particular case, what we have is an irrational and arbitrary classification, the 100 to 1 regime. We have individuals who are continuing to serve sentences under that irrational and arbitrary classification. We know it's irrational and arbitrary because Congress, in enacting the Fair Sentencing Act, made clear that the 100 to 1 regime was unwarranted, was unjustified, had no basis in science or evidence, no empirical reason for existing. So if Congress lowers it to 12 to 1 next month, does that make the 18 to 1 that you're advocating for arbitrary and irrational? Your Honor, that may be a question this Court has to confront. However, the question here is whether or not the 100 to 1 regime that Congress already made clear is not rational, is not based on any type of science, had this racially disparate effect, should continue to be applied to those who are serving mandatory minimum sentences under that regime. You're agreeing that 18 to 1, which is the current ratio, is okay. Your Honor, what I'm saying is that the 100 to 1 regime was not okay, and that's what Congress said, that the 100 to 1 regime is certainly not okay. The question of the 18 to 1 regime is not a question that this Court even ever has to confront if it were to accept the bluest construction of the Fair Sentencing Act itself. The 100 to 1 regime is something that Congress made clear was unwarranted and yielded unwarranted and unjustified sentences, unduly long, and was not based on any type of science or ration or reason. All of those reasons are things that are in the findings of the law. We know that they did change it. The question of why they changed it and whether they were making a constitutional judgment on themselves is not part of the law, is it? Well, Your Honor, those things are not in the text of the law, so to speak, in terms of congressional findings. But what we do have at the very preamble of the law was an effort to restore fairness to federal cocaine sentencing. And the United States Supreme Court in Kimbrough pointed out exactly what it was that troubled Congress with respect to the 100 to 1 regime. It said three things. First of all, the fact that it yielded these unwarranted and wretchedly unfair sentences where you have high-level cocaine offenders serving the same level of mandatory minimum sentences as low-level crack cocaine offenders. Secondly, that it yielded these unfairly and unwretchedly results in a sentencing regime that Congress knew had nothing to do with the actual conduct of individuals being involved in crack cocaine offenses. Thirdly, that it yielded these terrible results in terms of racial disparities where you have over 80% of those who are serving crack cocaine offenses being African American, whereas only 30% of them are users. Did you think the 100 to 1 ratio was unconstitutional when it was originally enacted by Congress? Your Honor, when the 100 to 1 ratio was originally enacted by Congress, that was Congress's judgment at that time. You had members of Congress making very clear that they thought there was a pharmacological difference between crack and powder cocaine. You had members of Congress making clear they thought there was a difference in terms of the level of danger involved in crack versus powder cocaine. You had members of Congress listing all types of reasons why the 100 to 1 regime should have been the way it is. But what we know in hindsight after the passage of the Fair Sentencing Act from members of Congress, people like Representative Lundgren, people like Dick Durbin, people like Patrick Leahy, all of whom said we have no idea. We started with a 20 to 1 disparity when we were talking about 1986 when they passed that act. We went to committee. We came out with 100 to 1. We don't know why we did it. We had no reason for doing it. But that's where we ended up. Okay, so it was okay at the time, but subsequent history shows that it's now become unconstitutional. Your Honor, that would be the basis. That would be reversing several of our prior cases, wouldn't it? We've got a case of the United States v. Williams in 1992. We've got the United States v. Reese in 1993. We've got the United States v. Mews in 2007. It all say that there's no equal protection violation due to this ratio. Well, Your Honor, all those cases, two points with respect to those cases. First of all, all those cases were decided before the Fair Sentencing Act was enacted, before Congress acted on the 100 to 1 regime and passed into law an 18 to 1 regime. That's the first point. The second point with respect to some of those cases is they're looking at an equal protection violation from the context of purposeful discrimination. They're looking at a bad actor and looking for racial animus in the passage of the act. We're not saying that there was racial animus in the passage of the act. What we are saying is that to apply the 100 to 1 regime now, with absolutely no reason or justification for doing so, violates equal protection clause because the clause has a concern with irrational or arbitrary treatment. And so that's the basis of the equal protection clause argument now. So do you have any case that would support your general proposition that when Congress, say, decides to make a criminal statute less harsh, that that raises an equal protection claim, disparate treatment, as to those sentenced prior to the effective date of that? I don't have a case on point with respect to that point, but what I can say is that when Congress acts in this manner, when they look at a sentencing regime and deem it irrational or arbitrary, to continue to impose that same sentencing regime on individuals,  So does that mean, I mean, to pinpoint it, the constitutional violation would be the failure of Congress to make its new law retroactive? Yes, that's correct, Your Honor. And I think that with respect to the other point and the concern that was raised with respect to Section 1B.1.10 of the sentencing guidelines, the language in that section talks about a mandatory minimum as the thing that stops an individual from being eligible for relief under 3582C. So if this Court were to read that as stopping individuals from getting relief, that too would constitute an equal protection violation. Do you have any case anywhere that has said that Congress's failure to make a law retroactive can be unconstitutional? No, Your Honor. I don't have cases that say that Congress's failure to make a law retroactive can be unconstitutional, but what I do have is clear precedent from at least from the 2nd Circuit, from the 6th Circuit, from the 7th, 8th, and 9th Circuit. We cite all these cases in our brief at footnote 22. All these cases where judges in concurrence noted that a change in the law, a change in circumstances like what we have here, where the 101 regime basically yields this retroactively unfair result, that Congress is made aware of that retroactively unfair result that it yields, that the 101 regime is based on no science or evidence or facts, that those types of concerns could give rise to an equal protection violation. I have two questions for you. I understand your argument not to be based on the disparate impacts, but to be a straightforward rational relation equal protection claim. Is that correct? That's correct, Your Honor. There are actually a couple of different arguments. First of all, we don't forego the purposeful discrimination argument that the panel opinion raised in this case. We do feel that the panel opinion raised it because the parties didn't raise it, right? That is correct, Your Honor. However, the panel opinion is still able to raise a constitutional concern with a statute that comes before that. Okay. But the argument you're making to us now is not dependent on purposeful discrimination. You're arguing for a lesser scrutiny, basically a rational relation. That's correct, Your Honor. However, what I'm asking the Court to do is apply a more rigorous version of that rational relation scrutiny in this particular case. And that's because when you have a classification that raises some doubts about the integrity of the democratic process, like what you have here, which is a 101 regime that had no basis in science or evidence, and that Congress recognized had this racially disparate impact, you have four reports in the United States Sentencing Commission saying that it has this racially disparate impact. You have the Attorney General, the Assistant Attorney General, members of Congress, judges, everyone recognizing it has this effect. In instances like that, the United States Supreme Court, and even this Court, has applied a more rigorous version of this rational basis test to determine whether or not there is actually a legitimate basis for the imposition of the continuation of this sentencing regime. I have one other question. Rather than asking the question whether there are any cases that say that Congress's failure to make something retroactive can lead to a nonconstitutional situation, are there any cases that say that what was once rational and constitutional has, by the passage of time and experience, become irrational and therefore unconstitutional? Your Honor, it's difficult to find those cases because this is the only time that Congress has ever acted in this way. Congress, since the passage of the Anti-Drug Abuse Act, has never taken a look at the 101 regime or any drug sentencing regime within the contours of that act and decided, you know what, this regime was not based on these arguments. I'm asking in any context. Your Honor, none come to mind. Mr. Sutherland, if we were to adopt your argument, how far would we go? I think you said that in 1986, when the Drug Act was originally enacted, it was constitutional, but now it's not. What date would we rule that it became unconstitutional? 1989, 1991? What is the date that all of a sudden this formerly constitutional act becomes unconstitutional and why? Your Honor, this Court doesn't have to adopt a particular date. I won't. Next case we're going to have to. Your Honor, what I'm saying is that this Court can avoid that constitutional question altogether by interpreting the act the way the Bluets are asking the Court to. Okay. To say it's retroactive, the Fair Sentencing Act, under your interpretation, would be retroactive to when? To 86? Your Honor, any offender who is serving a mandatory minimum sentence under the 100-to-1 regime should get the benefit of the Fair Sentencing Act as it's written today. They should get the benefit of the new 18-to-1 ratio. To 86, then? To 86. Okay. It strikes me that ultimately the question is who should be the proper agency of government to make this retroactive? Is it the courts or is it Congress? I mean, there's a push to try to make Congress do it retroactively, isn't there? There is a push to make Congress do it retroactively, but this Court does not have to wait and should not wait for that to happen. You say that, but that sort of strikes me as a very fundamental question of should we be the ones to do that? Well, Your Honor, when a constitutional violation is at stake, then the Court has an obligation to do it. If we deem it a constitutional violation. That's correct, Your Honor. But in Dorsey, the Court acted right away, despite the fact that there was a push in Congress to make more clear their language about it. But there, at least, he hadn't been sentenced prior to the act's effective date. That was a 5-4 decision in Dorsey, wasn't it? That's correct. But for the minority of the Court, wouldn't it have made it retroactive even to those not yet sentenced? That's what I think Judge Sutton was getting at, that everybody assumed that, oh, this Fair Sentencing Act wouldn't apply to those already sentenced. Well, Your Honor, the question in Dorsey was different than the question facing this Court. The question in Dorsey was whether or not the Fair Sentencing Act would apply to those whose conduct predated the act, the date of the Fair Sentencing Act, but who were being sentenced after the act. Right. Here, the question is whether or not those whose conduct predates the effective date of the act and sentencing predates the effective date of the act should get the benefit of the Fair Sentencing Act. And what Dorsey does, I think, is actually points in favor of the Bluets, because some of the concerns that were raised in Dorsey about you having individuals who were going to be serving sentences under one regime versus another, the idea that the Court was uncomfortable with perpetuating the 101 regime in this new set of sentencing that was going to be going forward. That was a real concern of the Dorsey Court. And on top of that, Dorsey Court did take a look at the Fair Sentencing Act and looked at it and read into the Fair Sentencing Act language that deemed it retroactive, at least to those offenders who would be sentenced after the effective date of the act. The fact that they didn't confront the 3582 issue in that case is a mere happenstance with respect to who the petitioners were in that case. And all the framing and context in that case was dealing with that particular issue. If the Court had to confront the issue of whether or not it should apply to individuals who had already been sentenced before the effective date of the act, then we might have had a different opinion. And the operation would be that someone invokes resentencing because the guideline was changed. And then when they're resentenced, you apply the new guideline, and then that section that refers to mandatory minimum, you interpret it as applying to the mandatory minimum then in effect. That's exactly right. And that's the mechanism. That's exactly right, Your Honor. And the important point about all of this is that if you look at the guidelines and the sentencing guidelines themselves and the sentencing stat, the mandatory minimums, the mandatory minimums are tied and woven into the guidelines. The guidelines are based on what the mandatory minimum sentences are. So that's the important part of the Fair Sentencing Act. When Congress told the Sentencing Commission, the sentencing commission, what we want you to do is enact guidelines that conform with the mandatory minimum sentences that we just put in place. That's what they meant. They're saying that since the Anti-Drug Abuse Act has been passed and since the sentencing guidelines were put in place, the mandatory minimum sentences have always been woven into the guidelines. And so what Congress knows is that the Sentencing Commission is going to make these new guidelines. It makes absolutely no sense that they would then make these sentencing guideline changes, want the guidelines to be reflective of the mandatory minimum sentences, but then you would say, oh, but wait a minute, we're going to hold on. We're going to use the old mandatory minimum sentences to stop anybody from getting relief under the new sentencing regime. That is irrational and arbitrary. Counsel, you'll notice that your red light has been on for a while. Sorry. Nothing to be sorry about. Thank you. Thank you. May it please the Court. The issue before this Court is are the Bluets eligible for a sentencing reduction under 3582C2? Now, we have made a motion that Jerry's Bluet is now moot because he can't get a sentencing reduction because he's completed his sentence. But since he hasn't supervised release, he is wrong. So what does that mean? How does that affect the mootness? It does not because he has not been on supervised release for a year. He has not moved to have his supervised release terminated. That is the only situation in which the Court then takes into account whether he should have gotten a reduction. So you're saying that mootness here is determined by ripeness? I don't know if I'd go that far, but it certainly isn't right. But it's moot as this Court has held. Once someone is finished with their prison term, their prison term cannot be lowered under the guidelines themselves. There's only that one provision that allows consideration when somebody applies for early termination. And this Court has said if you want to put a minimum as always, Well, his supervised release is also controlled by the Act, isn't it? So that the mandatory minimum has something to do with his supervised release? The length of it? No. The other cousin is still in jail, isn't he? Yes. So we have not moved to dismiss his case. And that's until December? That's just until December. So we'll cross that bridge if we come to it. But you're not arguing that the term of supervised release is not a substantive part of the sentence and hence would be an appropriate basis on which a person could get relief. You're not saying that, are you? I'm assuming you're saying it's not time yet. He hasn't served enough time unsupervised release, but that's a substantive part of the sentence, isn't it? I'm saying he cannot get relief under 3582C2, Judge. So I'm not saying anything about what part it plays in the sentence or anything else except that under 3582C2, which is what we're here to talk about, he cannot get relief under that statute anymore. But just theoretically, if this whole thing, 3582, all of this non-retroactivity is unconstitutional, and let's just say theoretically Jarius should have served no more than five years, it would be pretty strange to keep him under supervised release today. Isn't that true? No, Your Honor, it would not. He would still be required to serve a term of supervised release. Once he has been on supervised release for one year, he can apply to the court for early termination of a supervised release. You can't count towards your supervised release five years in prison? I'm sorry, Judge? You can't count towards your supervised release term five years in prison? No, you can't under Johnson, the Supreme Court case of Johnson. But what the court can do is take into account whether he should have been released sooner when determining whether to terminate his supervised release after the one year, which isn't here yet. Counsel, let's see if we can clarify the same point that Professor Berman makes in his brief. As I understand the way the law works now, and as he points out, a high-quantity crack cocaine defendant who received a guideline sentence, not a mandatory minimum sentence, can get a retroactive reduction to the sentence under the new act that has been adopted by the Sentencing Commission, but a less serious, lower-quantity, mandatory minimum defendant sentence under your supposition may not get any relief. Isn't that the case? That is the case, Judge. And let's classify high and low, higher and lower, middle, top, bottom. How is that possibly rational? I mean, under any scheme of rationality, how is it rational that the more guilty, higher-quantity defendant, who is sentenced under the guidelines, but not to a mandatory minimum sentence, gets a much greater reduction than the lower-quantity, less guilty crack defendant who is sentenced to a mandatory minimum? How is that possibly rational? Well, it's the way the statute works, and it's rational because Congress provided across the board. When we're talking about 3582C2, it doesn't just deal with crack cocaine crimes. 3582C2 deals with any crime for which the Sentencing Commission has subsequently lowered a guideline's range. The Sentencing Commission has certainly subsequently lowered a guideline's range, a guideline range that the defendant's original sentence was based on. And if the Sentencing Commission makes the call that that should be retroactive, and that's the Sentencing Commission's call, and Congress leaves that to the Sentencing Commission for the guidelines. The Sentencing Commission in 1B1.10 does not say, it's certainly not explicitly anywhere, that the new mandatory minimums shall not be what is the sentence once it's reviewed under 3582C2 for reduction purposes. It doesn't say that explicitly. It cannot say that, Judge, because the Sentencing Commission... So this court can interpret it. If it wants to, it can interpret the ambiguity or the lack of specificity to apply the new mandatory minimums and not continue with the old ones, right? No, Your Honor, and I disagree with the basis that it's ambiguous because the Sentencing Commission can only do what it has power to do. So the court has to interpret what the Sentencing Commission does in the context of its power. It has the power given to it by Congress by statute to reduce guidelines, and then it has the power to make those guideline changes retroactive. It does not have the power to make congressional statutory changes retroactive, not retroactive or anything else. Well, they're part of the guidelines. The mandatory minimums are explicitly part of the guidelines, are they not? No, they are not. Well, let me change that. The guidelines have to take those into account because the Sentencing Commission has no power to instruct courts that they can sentence defendants to something less than the mandatory minimum. Only Congress can do that, and Congress has set those mandatory minimums and has made no, come up with no mechanism, has passed no statute to say if we lower a statutory range, then court, you can go back and read the statute. Doesn't Section 5K of the guidelines say that mandatory minimums are part of the guidelines? 5G, Judge, 5G 1.2 does say that the court may not sentence below the mandatory minimum, and therefore the way it's been interpreted by the courts is that the mandatory minimum becomes the low end of the guidelines, and if the guideline range is wholly under the mandatory minimum, then the mandatory minimum itself. Well, so how can you say then that the mandatory minimum is not part of the guidelines, and hence when you start reducing under 1B1.10, you may not consider it to be part of the guidelines? Because the whole guidelines are based on the mandatory minimums that are in effect. I mean, that's the way the Sentencing Commission does it, plus the fact that the guidelines themselves say that the mandatory minimum is part of the guidelines. Well, Judge, I'm just going to disagree with you. We may be splitting words here. We might be saying the same thing in different ways, but the Sentencing Commission must take into account the mandatory minimums because the Sentencing Commission has no power to set guidelines below the mandatory minimum. Well, but isn't that the argument made here? The mandatory minimums were part of the guidelines. The Guideline Commission can affect the guidelines, so the Guideline Commission could abolish the mandatory minimums. Isn't that the logic of the argument? It is the logical extension of this argument, and that's why it's so flawed, because the Sentencing Commission has no power to do such a thing, and the Sentencing Commission itself recognizes expressly that it does not have the power. Why is it not arguable that – and I understand what you're saying. I mean, the Sentencing Commission can't just abolish the minimums. But when we're looking for congressional intent, and part of what Congress says is – and there is this relationship with the Sentencing Commission that kind of – of a lot of authority to them. So if we have this modification of the minimums, and then we have an express statement, an express direction to the Sentencing Commission to forthwith change the guidelines to reflect this, isn't it at least arguable that Congress anticipated, knowing that the Sentencing Commission makes things retroactive, et cetera, isn't it at least arguable that Congress at least expected in this situation that the Sentencing Commission would make changes that would be retroactive, and that when someone is sentenced comes up, there would be – of the mandatory minimum at that time? No, because that would be giving the Commission the power to lower the mandatory minimum, and it doesn't have that power. Well, Congress already did it. We're not saying that they would be lowering it. They would be applying the new mandatory minimum that Congress already enacted. They do apply the new mandatory minimum that Congress already enacted on original sentences. But on 3582C2 reductions – 3582C2 is the statute the Court is construing here, not the Fair Sentencing Act. The Supreme Court already did that in Dorsey, and the Supreme Court made it very explicit, very express, what the Fair Sentencing Act means. So 3582C2, though, is a very limited jurisdictional grant to the courts to reduce sentences that are otherwise final. It's an exception to the rule of finality, and it's very narrow, and it has to meet the criteria set out in 3582C2, and that criteria does not allow for the court to reduce a sentence below the mandatory minimum that the person was facing when he was originally sentenced. The original sentence is the sentence. The statutory scheme hasn't changed for that person. Well, you said it doesn't allow it, but where do you find that in the statute? The statute says sentences are final, and the court may not modify a sentence except as set forth below. Right. The other provisions of 3582 don't apply, only C2. And C2 says that if the sentencing commission lowers a guidelines range, if a defendant's sentence was based on a guideline that was subsequently lowered by the sentencing commission, the court may reduce that sentence if the reduction is consistent with the policy statement of the sentencing commission. Right. That's the universe. Yes, but keep going. I mean, you haven't answered the question. You haven't told us why that is. We know it has to be consistent with the policy statement. Here the guideline was lowered, and where in the policy statement does it say that this doesn't apply? Well, there are two premises that aren't correct. One is we have to go back to what the sentence was based on. The sentence was based on the mandatory minimum. It was not based on a sentencing guidelines range that was subsequently lowered. And the sentencing commission's policies say that when you consider whether somebody is eligible, you replace only the guideline that was affected by the amendment. Okay, but then you're going to get into the situation where someone who was sentenced to 121 months gets relief and the person who got 120 months doesn't. Yes. That's right. You're not conceding that. Conceding what? You're not conceding that the guy that got a 120-month sentence now gets the benefit of the new guidelines. You're saying he still has a 120-month minimum. Exactly, yes. Okay, so you can't rely on that language. You can't rely on the language that says that the sentence has to be based on the guideline. It doesn't help you for that person. I understand what you mean. In the Hammond situation, when the guideline range is lowered, that person's range is lowered maybe to the mandatory minimum or to the mandatory minimum. Okay, I'm asking you where is that language? You said you were relying on the policy statement. Yes. Now I'm asking you where is the language in the policy statement that enforces the old minimum? The commentary in Note 1 says that a sentence may not be reduced below the minimum sentence. How does that help you? Because it doesn't say which minimum. Clearly, if there had never been a change, that person would be subject to it. By the way, to think about it, what would happen if Congress and the FSA had actually made it clearly retroactive? What would be the mechanism for people serving a sentence to come get it lowered or get out of jail? That's a good way to come about it, Judge. Congress would have had to provide a mechanism. Does everyone agree you wouldn't use 3582? No, you would not use 3582c2 because it doesn't fit the language of 3582c2. Okay, so where is there something that we can all look at that shows when the lowering is done by Congress, here's how you get out of jail or here's how you get your sentence lowered? Is there something that kind of shows that when they're clear about their retroactivity, that's the alternative route and not 3582? It would have to be a 28 U.S.C. Section 2255 motion asking to vacate or set aside the sentence. Counsel, why not read what is written in the policy statement, but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision, parenthesis, e.g., a statutory mandatory minimum term? Why not read that? Thank you, Judge. Excuse me just a minute. Why not read that as applying the new, not the old, mandatory minimum? There's nothing explicit here that says you apply the old mandatory minimum. You can just as easily be rational and apply the new mandatory minimum. Because you have to look at the entire context. It's talking about what has been lowered, and if something has not been lowered by the amendment... The old mandatory minimum has been lowered considerably. Not by the amendment, though, Your Honor. Not by the Sentencing Commission's amendment of the guidelines. If the guideline's amendment has the effect of lowering it, and it doesn't have the effect of lowering it if the person was sentenced to a mandatory minimum. Well, that's just the way you're reading it, but you don't have to read it that way. You do have to read it that way if you take into account the authority and the power of the Sentencing Commission. You do have to read it that way if you read 3582C2. You do have to read it that way if you understand that Congress would have to have amended 3582C2. Doesn't that really bring you back to the question of who can make something retroactive? The Commission can't make it. Either Congress does it explicitly, or the Supreme Court interprets it. Exactly. And we haven't done that with Dorsey. Well, Dorsey did interpret the Fair Sentencing Act. No, I didn't make it retroactive by interpretation. That was what I meant. Yes, exactly. Dorsey interpreted the Fair Sentencing Act. Dorsey had the entire Fair Sentencing Act before it to interpret. It did not have to say, well, just because this person was sentenced after the effective date, we're going to say that it applies to him. They didn't do that. They interpreted the Fair Sentencing Act. And they took into account the fact that this is going to have set up disparities between people who are sentenced before the Act and those sentenced after the Act. The Supreme Court has already done this. With respect to the Professor Berman disparity that's come up a couple of times, isn't it fairer to say that some A, some high-level person who happens not to have hit a mandatory minimum may get a reduction and some low-level person who happens to hit a mandatory minimum may not, but the opposite might well be the case? It's simply a question that there's somebody out there where something happens that seems unfair. Not that it happens in every case, which was the way the quote seemed to read. That's correct, Judge. And the highest-level criminals are getting no reduction because the Fair Sentencing Act didn't lower their sentences, and the Sentencing Commission's amendments did not lower their guidelines range. Why do you say that? That's not true. Yes, it is. If it's a guideline sentence, it was lowered, so that if you got a high guideline sentence under the old regime, you got the sentence, and then you're entitled under 35A2C2 to petition for a retroactive review of that, and you can get that lowered if the judge does so. That isn't correct, Judge. There's a cutoff for quantity of crack cocaine that gets you into the highest level. If your quantity was above what is now the highest level, you do not get a sentence. That's why I said this happens. Some people, under some circumstances, something happens, and since the day the guidelines were enacted, every authority has said the guidelines don't make sense in lots of places. Child pornographers get more than murderers and so on. The point I was asking is it's not inevitable. It's not systemic. It's some of the time exactly what Professor Berman says happens. In fact, the lowest level dealers, there's a cutoff at the lowest level on the guidelines range, so those who were sentenced based on a range that they're still below the lowest, the lowest level dealers do not get a reduction as well. Why do you say that if Congress made this expressly retroactive, this would not be an avenue of relief? You'd go in and your guidelines range changed, and so you'd go in and you'd get relief. Your argument is based on the section that says it has to be consistent with the policy statement. The policy statement effectuating what Congress says says that you go ahead and you apply the new guidelines, and provided it doesn't go below the new congressionally established mandatory minimum, why would you not get relief in this session? Because 3582C2, the statute, you have to read the statute as well as the policy statements, and the statute says that the original sentence has to have been based on a guidelines range. If it was originally based on the statutory minimum, then the person is not eligible. Okay, so then the person who was sentenced to 121 months can proceed this way, but the person who was sentenced to 120 months cannot? The person who was sentenced to 121 months can proceed and get a one-month reduction. You're not listening to the question. The question that was asked is if Congress made it explicitly retroactive. You're saying that even in that case, where Congress makes it explicitly retroactive, you could not go through this procedure? I am, because this statute is aimed at something different than lowering statutory penalties. It's a combination. It's a combination of a guidelines and a statement that says that when you go in for resentencing, apply the minimums then in existence. If Congress did that, then yes. That was the question. Did 3582, I'm trying to help with Judge White's point, did 3582 exist before the guidelines? No. It's about guidelines because it came about with the guidelines. It did. It was part of the Sentencing Reform Act of 1984, so it's been in existence from the beginning. Before then, when there was lowering by Congress, you're saying all there was was 2255? Yes, although I don't believe that's happened since then, but that would be all there would be, unless Congress amended it. How would 2255 work if all you're asking for is a lowering of your sentence? You're 10. You think you deserve five, but you're only in your fourth year. You're saying you can't do anything until you can't even clarify that you get out at five? There would be difficulties with 2255. That's why it would be important for Congress to actually set up a mechanism for getting relief based on their retroactivity decision because they don't have such a thing in place at this time. Things like Rule 35 have changed, too, over the years. I don't know if it has changed in a way that would do anything to alleviate this, but there have been other changes in when and how a sentencing reduction may be obtained, correct? Yes, Your Honor, and it's been restricted, more limited than it was before the Sentencing Reform Act of 1984. I'm perplexed by the relationship between your argument and the wording of Dorsey that talks in terms of the line-drawing effort that will exist whenever Congress enacts a new law changing sentences, but then there's the parenthetical. Unless Congress intends reopening sentencing proceedings concluded prior to a new law's effective date. Another explanatory sentence and then a compare, and what's in the compare? 3582C. How does that fit with your argument? It seems to me that that is saying if there is a congressional intent, and we are not addressing that here, but if there is a congressional intent in the reopening of sentences, then we have a different situation. Compare, citing 3582C. Well, first, I disagree with your premise that we're not considering that here. Dorsey did consider that for the Fair Sentencing Act. Its citation of 3582C was simply an example of when Congress does allow for sentences to be reduced retroactively. They weren't saying that 3582 goes beyond what it actually says. It was simply using that as an example of a separate situation where Congress has decided something can be made retroactive. It doesn't say that unless Congress expressly says it shall be retroactive. It talks in the very terms that the rest of Dorsey talks about, which is unless Congress intends. So aren't we back at looking at congressional intent? No, we are not. Well, how so? How are we not when that's what Dorsey says? Because Dorsey did look at congressional intent. Dorsey did interpret the congressional intent for the Fair Sentencing Act. And the intent it found was that pre-Act offenses shall use new mandatory minimums in sentencing post-Act. Correct? Correct. And what is being requested and what we're discussing here is pre-Act offense behavior being resentenced on the new mandatory minimums. So how do you distinguish those two, particularly in light of this parenthesis? Because the sentences for people who committed their offenses before the Act's effective date and were sentenced after the effective date, those sentences are original sentencing. They're full sentencing. A 3582C2 proceeding is a very narrow, Dylan, limited, Dylan proceeding, which only takes into account a lowering of a sentencing guideline. And it's not, expressly not, a full resentencing. Again, Dylan says that. We're not dealing with a full resentencing. That's why, that's the difference between those who Dorsey does give a favorable result to and those like the Bluets who it does not. Your argument there is premised on the assumption that a mandatory minimum is not part of the sentencing guidelines. Right? I mean, you can't have it both ways. Judge, the sentencing guidelines have to take into account the mandatory minimums. To say that they're part of the guidelines. So why are not the sentencing guidelines, why don't they include the mandatory minimums? They include the mandatory minimums for original resentencing. They recognize the limitations on their authority, and they do not instruct courts that they can sentence below a mandatory minimum because a court wouldn't do that. The court would follow the statute. The sentencing commission exercises its authority under 3582C2, but only its authority. It doesn't exercise authority, it does not have. Would it be fair to think of it this way, Mr. Cushing? The sentencing commission could have chosen to make the guidelines for these various cocaine offenses consistent with the mandatory minimums, but the commission has never taken that position, partly because there have been people within the judiciary and within the commission who have not thought for a long time that mandatory minimums were the way to go. So what the guidelines did was develop the guidelines based on what seemed appropriate for a guideline range, but the commission also recognized that when there was a mandatory minimum, that mandatory minimum would have to control over the sentencing commission judgment of what the guideline range should be. So they take into account the guidelines in that respect, but not in the way they could have, which is just made the range, the guidelines, and up. Is that fair? That's exactly the way it's done. And in my last five seconds, the sentencing commission did not even have to make the guidelines amendments retroactive. Do you know what happened to Hill? Hill was the companion to Dorsey. He got 10 years. He was sentenced after the FSA went into effect, and Dorsey, they show that's wrong. So he had a 10-year sentence on the books. I'm going to bet you anything he doesn't have a 10-year sentence anymore. Was that done by 3582, or how was that done? It was done because it was remanded for resentencing, so it was still in his original sentencing proceeding. It was still part of his case before his sentence became final. In the Blewett sentence, sentences are final. And the only avenue they have, well, they don't have an avenue here because they're not eligible under 3582C2, but that would have been the only avenue they would have had to revisit their sentence at all. So one quick question on 3582. Your position is congressional intent regarding the viability of using that in this circumstance just doesn't matter. You do not ask yourself the question what Congress intended because you've interpreted 3582 as unavailable to provide a remedy. Is that your position? If I'm following your question correctly, and I'm not sure I am, no, congressional intent does matter. But congressional intent has been interpreted by the Supreme Court, and it's been interpreted to mean that those sentenced in their original sentencing, after the effective date of the Fair Sentencing Act, get the benefit of the Fair Sentencing Act. That's congressional intent. Those who were sentenced before that do not get the benefit of the Fair Sentencing Act. Dorsey has done that. That interpretation is done. It's settled. What if we disagreed with your interpretation? So let's say, all right, we have a disagreement on what Dorsey means. So let's put Dorsey aside. What is your best argument without Dorsey, without your interpretation of Dorsey? My best argument is still the statute. 3582C2 is the statute we are looking at here. That's the only one that needs to be interpreted. The Fair Sentencing Act is not for this court to interpret in this context. The question is, are these defendants eligible for a reduction under the plain language of 3582C2 and the policy statements of the Sentencing Commission? We don't get beyond the plain language of 3582C2. These defendants' sentences were not based on a guidelines range that has subsequently been lowered, so they are not eligible, and that's our best argument. Thank you, Your Honors. Thank you, Counsel. Your Honors? Thank you, Your Honors. Let me be clear. We maintain that the Blewitts are indeed eligible under 3582C2. Their guideline range was lowered by the Commission. I pointed out earlier that Cornelius' guideline range initially, his original guideline range was 110 to 137 months. After the FSA guideline amendments were enacted, his guideline range was reduced to 63 to 78 months. Jarius was in the same situation. His original guideline range was 100 to 125 months. That depends on the interpretation of applicable guideline range. That is, if you have a mandatory minimum, some or all of that guideline range is not applicable because it can't be used. Isn't that the argument on the other side? You have to use the word applicable as well as guideline range. Yes, Your Honor. Applicable guideline range is key here. We're cognizant of the Court's decision in Joyner. Respectfully, I think the analysis in Joyner is flawed. Applicable guideline range under Note 1A of 1B.110 says, The applicable guideline range is the range that corresponds to the total offense level and criminal history as determined pursuant to 1B.1.1. Then we go to 1B.1.1 and it tells the district judge, here are the steps that you have to follow. The judge gets down to A7 and the guideline says, Determine the guideline range in Part A, Chapter 5, that corresponds to the offense level and the criminal history. We look at Chapter 5, Part A. It says the intersection of the offense level and the criminal history displays the guideline range. Now, the mandatory minimum is not part of that guideline range. It does not correspond to either the criminal history or the total offense level. More importantly, I think, when the judge gets down to A7 where it says, Determine the guideline range, by the time he gets to A8, which implicates the mandatory minimum, the judge has already determined what the applicable guideline range is. I just want to go back to the point that the Equal Protection Council argues. When you're looking at even that mandatory minimum, that's quantity driven. What he says is that you have to look at the new regime, the 18 to 1 regime, rather than the 100 to 1 regime, and even determining whether or not the conduct or the quantity triggers a mandatory minimum. You look at that in conjunction with the guidelines. Is that correct? Certainly, the guidelines are triggered by quantities of facts. You say that when you look at that, then, the guideline would have been lowered, even under the mandatory minimum, potentially, based on quantities. Is that right? Yes, Your Honor. The Sentencing Commission hasn't taken a position on your interpretation of C582, have they? Or would you say they don't agree with it? Well, Your Honor, actually, in Judge Sarris's... We filed a 28-J letter, which includes Judge Sarris's... Yeah, I've read that. So the Commission is clearly against the crowded-cowder ratio. They'd like things to be as retroactive as possible. But what seems hurtful to your argument is they spend all this time with 3582, and I do not think they agree with your interpretation of 3582. Your Honor, in that letter, Judge Sarris... Oh, the Commission takes the position that the FSA should be fully retroactive. That's a legislative position. They're saying Congress should do that, right? Yes. They're talking to Congress about what Congress should do. That's right. They didn't say, we, the Commission, believe this is the law today. Yes, Your Honor. That was in our state. So they haven't said something that's consistent with your interpretation of 3582. Well, I mean, to the extent, as Mr. Sutherland pointed out, there have been numerous reports from the Commission criticizing the 100-to-1 ratio and saying that it should be reduced. Have they rejected your position? Not as to what it should be, but as to what it is. I don't believe so, Your Honor. They have not, according to you. I don't believe they've rejected our position. They just haven't said clearly one way or the other, is that right? Yes, Your Honor. Thank you. If there are no other questions, thank you, Your Honor. There are not. Thank you very much, counsel.